UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TIMMINS SOFTWARE CORPORATION d/b/a MITREND, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 19-cv-12053-IT |
| EMC CORPORATION, DELL TECHNOLOGIES INC., and DELL INC., | * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER
November 24, 2020

TALWANI, D.J.

Plaintiff Timmins Software Corporation's Amended Complaint [#5] brings seven counts against Defendants EMC Corporation, Dell Technologies Inc., and Dell Inc. based on allegations that Defendants infringed on Plaintiff's copyrighted software and engaged in other unscrupulous business practices. Plaintiff's claims include: alteration or removal of copyright management information (Count III); unjust enrichment (Count IV); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count VI); and unfair trade practices under Mass. Gen. Laws ch. 93A ("93A") (Count VII). Defendants have moved to dismiss these four counts for failure to state a claim pursuant to Fed. R. Civ. P. 8(a)(2) and 9(b).[1] For the reasons explained below, Defendants' Motion to Dismiss Counts III, IV, VI, and VII of the Amended Complaint [#22] is DENIED.

---

[1] Plaintiff's claims for copyright infringement (Count I), contributory copyright infringement (Count II), and breach of contract (Count V) are not challenged in the pending motion.

1

I. **Facts Alleged in the Amended Complaint**

Timmins Software Corporation ("TSC" or Plaintiff), also known as Mitrend, is a small Massachusetts-based company that develops software. Am. Compl. ¶¶ 1, 9, 10 [#5]. TSC's products and services were developed over more than ten years and have two parts: TSC provides its Mitrend Collection Tools ("the Mitrend Tools") to IT departments so those departments can acquire information about their IT systems, and TSC's cloud-based SaaS platform was developed to receive and analyze the output of the Mitrend Tools and generate reports about the target IT infrastructure. Id. ¶¶ 11–12; 19–20. To protect these products and services, TSC has, "among other things, obtained copyright and trademark protection." Id. ¶ 12.

Defendants are EMC Corporation ("EMC"), Dell Technologies Inc., and Dell Inc. (collectively "Dell" or "Defendants"). Id. ¶¶ 2–4. EMC began using TSC's analysis services in 2006 and entered into a Master Services Partner Agreement on or about March 2, 2006 (the "Agreement"), as well as various subsequent amendments and statements of work relating to the TSC products provided to EMC. Id. ¶ 13. Despite this long history, TSC alleges that its "vision and approach" was conceived independently from EMC, id. ¶ 17, and the Mitrend Tools were developed and marketed independently from EMC, id. ¶ 22. Moreover, Plaintiff claims that "[a]ll of the [Mitrend Tools], and written procedures, rules, and instructions that were provided to EMC contained or pointed to a copyright protection notice, identifying TSC as the owner of such material." Id. ¶ 36; see also id. ¶ 98.[2]

Initially EMC declined to use the Mitrend Tools, opting to use EMC's own software instead. Id. ¶ 22. However, Plaintiff alleges that once EMC did begin to use them, the Mitrend

---

[2] Plaintiff also alleges that it is "in the process of obtaining copyright registrations on additional aspects of the [Mitrend Tools] . . . and additional material relating to the Mitrend platform's written instructions, rules, and procedures." Id. ¶ 73.

Tools became the "best, and primary, data collection and analysis solution that EMC's . . . [employees] used as a sales aid to sell (or upsell) products and services to customer IT departments." Id. ¶ 24. Plaintiff further alleges that the Mitrend Tools "became an integral part of EMC's sales strategy," id. ¶ 25, and within three years of EMC using the Mitrend Tools, its business units abandoned EMC's old collection software in favor of the Mitrend Tools to support their sales efforts. Id. ¶ 26.

As relevant here, Plaintiff alleges that its relationship with EMC was strong until 2016, but that shortly after Dell acquired EMC, things began to change. Id. ¶¶ 37–38. In early 2017, EMC "unexpectedly" informed TSC it would require new—and disfavorable to TSC—contract terms. Id. ¶ 40. Plaintiff alleges the timing of these demands was a tactic to pressure TSC to acquiesce, id. ¶ 41, but TSC did not capitulate, and instead terminated the parties' agreements, id ¶ 42. EMC responded by "demand[ing] TSC agree to an extension of the parties' agreements . . . us[ing] the unequal bargaining power of the parties, and aggressively—and falsely—stat[ing] that TSC was in breach of its legal obligations." Id. ¶ 44. Indeed, Plaintiff alleges "Defendants improperly pressured TSC to agree to unreasonable contract terms, used knowingly false accusations and leveraged the parties' unequal bargaining power to force TSC to agree to an extension of the parties' agreement and then used that extension to buy time and retain access to the [Mitrend] platform…" Id. ¶ 131.

Plaintiff alleges that with the access and time provided by the extension, Defendants built their own product—Live Optics—to compete with TSC's Mitrend Tools. Id. ¶ 51. Plaintiff alleges that Live Optics was built by EMC unlawfully. Namely, Plaintiff alleges that Defendants copied large portions of the copyrighted Mitrend Tools, id. ¶ 64, that earlier versions of Live Optics products contained the copyrighted Mitrend Tools, id. ¶ 65, and that EMC removed

3

TSC's copyright notices and replaced them with their own, id. ¶¶ 65–66. Plaintiff further alleges that Defendants unlawfully received benefits from their infringement of not only the copyrighted Mitrend Tools, but also from other software, scripts, written instructions and procedures, and other material that Plaintiff provided to Defendants. Id. ¶ 106. Moreover, Plaintiffs allege that Defendants made to their customers "false statements about Live Optics (*e.g.*, that it is '100% Dell IP' and '[n]othing is going away. It's actually just a rebranded experience')." Id. ¶¶ 122–24.

## II. Legal Standard

To survive a motion to dismiss, the well-pleaded facts in Plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

## III. Discussion

Defendants' motion to dismiss is based on three grounds. First, Defendants allege Counts IV, VI, and VII are duplicative of and / or preempted by remedies provided in the federal Copyright Act; second, they allege Counts III and VII sound in fraud and thus should be dismissed for failing to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b); and third, they make an oblique reference to Count III potentially failing to meet the pleading standards of Rule 8(a). The three arguments are discussed in turn.

A. <u>Duplicative / Preemption Challenges (Counts IV, VI, and VII)</u>

Defendants assert that Counts IV, VI, and VII are subject to dismissal as a matter of law because the Copyright Act establishes itself as the sole basis for copyright protection. Mem. Supp. Mot. Dismiss 1 [#23] (citing 17 U.S.C. § 301(a) (setting forth that all legal or equitable rights within the general scope of copyright "are governed exclusively by this title" and that "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State")). Specifically, Defendants assert Plaintiff's unjust enrichment claim (Count IV), its Lanham Act claim (Count VI), and its 93A claim (Count VII) are all repackaged copyright claims insofar as they—as required to avoid being duplicative of, or preempted by, the federal Copyright Act—do not contain an extra element beyond the copyright claim. <u>Id.</u> at 4; <u>see also id.</u> at 5–6. Plaintiff counters that Defendants' argument mischaracterizes the factual bases for these claims and that Plaintiff is alleging causes of action that stand independent of the alleged underlying copyright violation. Opp'n Mot. Dismiss 9 [#30]. Because the relevant inquiry is fact-specific for each claim, the court addresses Defendants' challenges as they relate to the three claims in turn.

      *i. Unfair Competition Under 15 U.S.C. § 1125(a) (Lanham Act Claim) (Count VI)*

Defendants argue that Plaintiff's Lanham Act claim relies upon "merely recycled and repackaged copyright allegations" and thus it is duplicative of the copyright claim. Mem. Supp. Mot. Dismiss 5 [#23]. Plaintiff counters that its Lanham Act claim is not duplicative because it is "<u>also</u> premised on Defendants' false statements . . . its ongoing references to Mitrend in its public-facing documentation, and its copying of basic (and non-federally-registered copyright) elements of Mitrend." Opp'n Mot. Dismiss 9 [#30] (emphasis in original). As discussed further

5

below, because Plaintiff's Lanham Act claim relies on allegations independent of the issue of infringement, the court concludes that the claim is not duplicative as a matter of law.

"The test to determine whether a cause of action includes an extra element that changes the nature of the action to make it qualitatively different from a copyright infringement claim is functional and fact-specific." Real View, LLC v. 20-20 Techs., Inc., 789 F. Supp. 2d 268, 273 (D. Mass. 2011). "Where a plaintiff's Lanham Act claim merely alleges that the defendant made unauthorized use of a copyrighted work, the Lanham Act claim will be dismissed as duplicative of the copyright claim." Mitchell Int'l, Inc. v. Fraticelli, No. CIV. 03-1031 GAG/BJM, 2007 WL 4197583, at *12 (D.P.R. Nov. 26, 2007) (quoting Ulloa v. Universal Musical and Video Distribution Corp., 303 F. Supp. 2d 409, 419 (S.D.N.Y. 2004)).

For example, the plaintiff in Ivymedia Corp. v. iLIKEBUS, Inc. alleged that defendants violated the Lanham Act because their website "contain[ed] materials intentionally copied from [plaintiff]'s websites and infring[ed] on [ ] copy-righted materials." No. 15-11918-NMG, 2015 WL 4254387, at *5 (D. Mass. July 13, 2015). Based on these allegations, the court held that plaintiff failed "to make any allegations to support its Lanham Act claim beyond those in support of its copyright infringement claim." Id.

As in Ivymedia, here Plaintiff's Lanham Act claim includes allegations of simple copyright infringement. See Am. Compl. ¶ 122 [#5] (alleging "intentional and blatant infringement of the Mitrend Collection Tools and/or the Mitrend Data Collection Procedures"). However, in contrast to Ivymedia, Plaintiff also alleges that Defendants made "false statements about Live Optics (*e.g.*, that it is "100% Dell IP" and "[n]othing is going away. It's actually just a rebranded experience"). Id. These allegations do not merely accuse Defendants of infringing Plaintiff's copyrighted material, but also of providing false or misleading representations that

were "likely to deceive customers as to the origin, source, and/or sponsorship" of the product. Am. Compl. ¶ 124 [#5]. These additional allegations are elements exclusive to the Lanham Act claim, which "prohibits unfair competition through false or misleading representations that could cause confusion with respect to the 'origin, sponsorship, or approval' of goods or services." Ivymedia, 2015 WL 4254387, at *5 (quoting 15 U.S.C. § 1125(a)(1)(A)). Accordingly, the amended complaint properly pleads a cause of action under the Lanham act that is not simply duplicative of the alleged copyright violation and is thus not subject to dismissal.

    *ii. Chapter 93A Claim (Count VII)*

Defendants argue that Plaintiff's 93A claim is a "transparent effort to dress up a copyright claim as a 93A claim" in violation of Section 301(a)'s mandate that the Copyright Act be the only remedy for asserting copyrights. Mem. Supp. Mot. Dismiss 4, 6 [#23]. Plaintiff counters that "[f]ederal copyright infringement is . . . not the crux of [Plaintiff's] Chapter 93A claim," and therefore the 93A claim should not be dismissed as preempted. Opp'n Mot. Dismiss 8 [#30].

"Section 301(a) states, in pertinent part, that: '[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed *exclusively* by this title.'" Tingley Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 104 (D. Mass. 2001) (emphasis added) (quoting 17 U.S.C. § 301(a)); see also Real View, LLC v. 20-20 Techs., Inc., 789 F. Supp. 2d 268, 272 (D. Mass. 2011) (quoting 17 U.S.C. § 301(a)) ("the Federal Copyright Act contains an express preemption provision that preempts all state causes of action that are grounded in 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . and come within the subject matter of copyright'").

A state law claim is preempted if "it does not require an element beyond 'mere copying, preparation of derivative works, performance, distribution or display.'" Santa–Rosa v. Combo Records, 471 F.3d 224, 226 (1st Cir.2006) (quoting Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1st Cir.1994)). The "'extra element' necessary to prove the state law claim must be such as to render that claim 'qualitatively different' from a copyright claim in order to avoid preemption." Patricia Kennedy & Co. v. Zam-Cul Enterprises, Inc., 830 F. Supp. 53, 56 (D. Mass. 1993). However, "[c]ourts have held that an allegation of the use of unethical means to *access* another's copyrighted work sufficiently sets a c. 93A claim apart from copyright law to escape preemption." Real View, 789 F. Supp. 2d at 273–74 (emphasis in original) ("[Plaintiff] sought entry into the c. 93A scheme . . . by focusing on the means [defendant] allegedly used to access the [copyrighted material]. [Plaintiff] asserts that [defendant] illegally 'hacked' into [plaintiff]'s website for the purposes of downloading the tutorial videos. If substantiated, this claim would include an 'element' that makes it qualitatively different from a copyright infringement claim").

As another example, in Tingley, a state trade secrets claim was held not to be preempted because it also had the required "extra element." 152 F. Supp. 2d at 107. Namely,

> [t]he extra element supplied under the state cause of action w[as the] require[ment of] the showing of the use of an improper means in breach of a confidential relationship to acquire the trade secret[. This] qualitatively distinguishe[d] the trade secrets counts from federal copyright law. The factual allegations in the complaint allege the type of trade secrets violation involving the breach of a duty of confidentiality. Such a claim therefore requires proof of a breach of a confidential relationship which is not required by federal copyright law and therefore is not preempted.

Id. As "[t]he state law cause of action require[d] establishing the use of an improper means in breach of a confidential relationship . . . there exist[ed] the necessary qualitative difference from copyright law." Id.

8

Here, as in <u>Tingley</u>, the factual allegations in the Amended Complaint support a claim that requires proof of an "extra element" not required by federal copyright law. *Inter alia*, Plaintiff alleges "Defendants improperly pressured TSC to agree to unreasonable contract terms, used knowingly false accusations and leveraged the parties' unequal bargaining power to force TSC to agree to an extension of the parties' agreement and then used that extension to buy time and retain access to the [Mitrend] platform." Am. Compl. ¶ 131 [#5]. Plaintiff argues this qualifies as "unfair acts and practices and . . . unfair methods of competition within the meaning of Massachusetts General Laws 93A." <u>Id.</u> Plaintiff's allegations are therefore analogous to those made in <u>Real View</u>; there the plaintiff's 93A claim focused on the means the defendant allegedly used to access the copyrighted material—allegedly, hacking into plaintiff's website—and did not rest its 93A allegation on the mere fact that there had been an infringement of plaintiff's copyright. 789 F. Supp. 2d at 273–74. Here as well, Plaintiff's 93A claim isn't simply an allegation that Defendants acted unfairly or deceptively through the accused act of infringement, but that Defendants employed unfair business practices in order to gain access to the copyrighted material (with specific, and plausible, factual allegations that support the claim). Accordingly, as in <u>Real View</u> and <u>Tingley</u>, Plaintiff has alleged a set of facts that may give rise to rights and remedies established by 93A that are separate and apart those that are provided under the federal Copyright Act. Therefore, the 93A claim is not preempted.

   *iii. Unjust Enrichment Claim (Count IV)*

Defendants argue Plaintiff's claim for unjust enrichment is preempted by the Copyright Act as it is based on the same factual allegations as a copyright claim asserted in the same complaint. Mem. Supp. Mot. Dismiss 5 [#23]. Plaintiff argues the unjust enrichment claim is not *solely* based on the same allegations as the copyright claim, and thus should not be dismissed.

See Opp'n Mot. Dismiss, 9–10 [#30]. Specifically, Plaintiff argues that the unjust enrichment claim includes extra elements not present in TSC's copyright claim, and is also premised on Defendants' use of TSC's non-federally-copyrighted material. Id. As set forth below, the court agrees that Plaintiff's unjust enrichment claim as pleaded is not preempted.

Under Massachusetts law, a claim for unjust enrichment requires there be "unjust enrichment of one party and unjust detriment to another party." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009) (quoting Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 234 (1st Cir. 2005)); see also id. (quoting 26 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 68:5 (4th ed. 1993)) ("unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value").

Where an unjust enrichment claim is based solely on infringement, "a state cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence preempted insofar as it applies to copyright subject matter." Tingley, 152 F. Supp. 2d at 112 (quoting 1 Nimmer on Copyright § 1.01[B][g] (1994)).

For example, in Data Gen. Corp. v. Grumman Sys. Support Corp., a plaintiff claimed both unjust enrichment and copyright infringement. 795 F. Supp. 501, 506 (D. Mass. 1992), aff'd, 36 F.3d 1147 (1st Cir. 1994). However, the court held the former "[wa]s for damages for the alleged violation of [plaintiff]'s exclusive right to control the use of the copyrighted materials, and [wa]s thus another repackaged allegation of copyright infringement. Such a claim

is preempted by federal law." Id. Similarly, in Tingley, the court observed that "[plaintiff]'s claim essentially repackages its allegations of copyright infringement by adding the allegation that [defendant] unjustly benefitted from its acquisition of the [plaintiff's] software." 152 F. Supp. 2d at 112. As in Data Gen, 795 F. Supp. at 506, in Tingley the court held the unjust enrichment claim to be preempted since it "d[id] not qualitatively differ from a copyright infringement claim. The claim s[ought] to recover benefits which [defendant] derived from its unauthorized use and copying of the copyrighted software." 152 F. Supp. 2d at 112.

Here, the facts underlying Plaintiff's unjust enrichment claim differ materially from those facts alleged in both Tingley and Data Gen since Plaintiff alleges that the source of Defendants' unjust enrichment was not simply the result of infringement. Namely, Plaintiff alleges that, as with the 93A claim and the Lanham Act claim, Defendants were unjustly enriched as a result of improperly and unfairly pressuring Plaintiff, see Am. Compl. ¶ 131 [#5], and through their false statements in public-facing statements, see id. ¶ 122. Moreover, Plaintiff plausibly alleges that this conduct was to the detriment of Plaintiff. Id. ¶ 109. These allegations properly plead a claim of unjust enrichment under the elements of the action as set forth by the First Circuit in Massachusetts Eye & Ear Infirmary, 552 F.3d at 57, and, furthermore, do not simply arise from the same allegations as the copyright claim asserted in the amended complaint.

B. Rule 9(b) Challenge (Counts III and VII)

Defendants argue that Plaintiff asserts two claims that sound in fraud and/or misrepresentation—the Alteration or Removal of Copyright Management Information Claim (Count III) and the Chapter 93A claim (Count VII) —and therefore must be pleaded with particularity under Fed. R. Civ. P. 9(b). Mem. Supp. Mot. Dismiss 9 [#23]. Defendants further contend that the claims fail to meet this heightened pleading standard and must therefore be

dismissed. Id. Plaintiff rebuts that the Rule 9(b) standard does not apply to either of these two claims. See Opp'n Mot. Dismiss 10–14 [#30]. For the reasons set forth below, the court concludes that neither claim falls within Fed. R. Civ. P. 9(b)'s limited exception to the notice pleading requirement.

       *i.*      *Alteration or Removal of Copyright Management Information Claim (Count III)*

In Count III, Plaintiff alleges that Defendants intentionally removed or altered "copyright management information" from Plaintiff's copyrighted works, in violation of 17 U.S.C. § 1202(c). Am. Compl. ¶ 100 [#5]. Defendants argue that Count III is premised upon an allegation of "intentional and willful misrepresentation [which] sounds in fraud and must be pleaded with particularity." Mem. Supp. Mot. Dismiss 9 [#23]. Plaintiff disputes the applicability of Rule 9(b)'s heightened pleading requirement to a charge under 17 U.S.C. § 1202(c), arguing that no court has held that Rule 9(b)'s requirements apply to such a cause of action, and that this "makes sense" as "[a]ll three subsections of 17 U.S.C. § 1202(b) merely require the 'intentional' removal of copyright information." Opp'n Mot. Dismiss 13 [#30].

Plaintiff has the better argument. Defendants analogize the claim in Count III to false marking claims where Rule 9(b) has been held to apply. See PetEdge, Inc. v. Marketfleet Sourcing, Inc., No. CV 16-12562-FDS, 2017 WL 2983086, at *2 (D. Mass. July 12, 2017) ("Because a [35 U.S.C.] § 292 claim requires an intent to deceive the public, it sounds in fraud and therefore must satisfy the heightened pleading requirements of Rule 9(b)"). Based on PetEdge, Defendants argue:

> "[i]f a plaintiff pleading false marking under patent law must identify the false markings with particularity . . . then[, as here] a plaintiff alleging 'willful and intentional' alteration or removal of copyright management information should likewise be required to plead what particular copyright management information he or she has in mind and how specifically it was altered or removed."

See Reply Mem. Supp. Mot. Dismiss 6 [#37]. But Defendants' analogy of § 1202(b) claims to § 292 claims is unpersuasive; it is "[b]ecause a § 292 claim requires *an intent to deceive* the public, [that] it sounds in fraud and therefore must satisfy the heightened pleading requirements of Rule 9(b)." PetEdge, 2017 WL 2983086, at *2 (emphasis added). Unlike § 292, the claim at issue here requires no such intended deception. See 17 U.S.C. § 1202. Rather, "[t]o establish a violation of [§ 1202(b)], a litigant must only show (1) the existence of [copyright management information] on the allegedly infringed work, (2) the removal or alteration of that information and (3) that the removal was intentional." Fischer v. Forrest, 968 F.3d 216, 223 (2d Cir. 2020) (citing 17 U.S.C. § 1202(b)). As § 1202 does not include a deceptive intent requirement, the heightened pleading standard of Fed. R. Civ. P. 9(b) does not apply to Count III.

    ii. 93A Claim (Count VII)

Defendants also argue that Plaintiff's 93A claim sounds in fraud since it "alleg[es] that Dell 'used knowingly false accusations' to advance its putative copyright infringement scheme." Mem. Supp. Mot. Dismiss 9 [#23] (quoting Am. Compl. ¶ 131 [#5]). They contend that, because the 93A claim sounds in fraud, Rule 9(b)'s heightened pleading standard applies. See id. at 9–10. Plaintiff responds that "[b]ecause fraud does not comprise the 'core' of TSC's Chapter 93A allegations, Defendants' argument is without merit," Opp'n Mot. Dismiss 11 [#30], and moreover, that "the lone factual allegation that Defendants base their argument on does not fundamentally sound in fraud," id. at 12.[3]

---

[3] Although Plaintiff does not argue in the alternative that the 93A claim meets Rule 9(b)'s heightened pleading standards, a review of the Amended Complaint leads the court to conclude that the 93A claim is pleaded with sufficient particularity. See, e.g., Am. Compl. ¶ 44 [#5] (discussing false statement allegedly made by a Defendant to Plaintiff and including, in context, basic details on who made the false claim, approximately when and where it was made, and the overall contents of what was said).

13

"Rule 9(b)'s requirements apply to both general claims of fraud and also to 'associated claims,' . . . 'where *the core allegations* effectively charge fraud.'" Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21–22 (1st Cir. 2017) (emphasis added) (quoting North Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009)); see also Bezdek v. Vibram USA Inc., No. 12-10513-DPW, 2013 WL 639145, at *3 n.3 (D. Mass. Feb. 20, 2013) ("allegations may . . . 'sound in fraud' so as to trigger the requirements of 9(b) when fraud lies at the 'core of the action.'"). "The absence of the labels 'fraud' or 'fraudulent' in a complaint is not determinative if the core factual allegations being made 'effectively charge fraud.'" Micronics Filtration Holdings, Inc. v. Miller, No. 18-CV-303-JL, 2018 WL 4845749, at *4 (D.N.H. Oct. 4, 2018), reconsideration denied, No. 18-CV-303-JL, 2018 WL 6529081 (D.N.H. Dec. 12, 2018). Rather, the First Circuit has "ma[de] clear that 'the case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud.'" Id. (quoting Cardinale, 567 F.3d at 15). Claims that rely on allegations of intentional and malicious false statements, even when they are not pleaded as fraud, have been held to be "effective" allegations of fraudulent misrepresentations that cannot serve as the "lynchpin" of a cause of action without triggering Rule 9(b). See id. (quoting Cardinale, 567 F.3d at 14–15).

For example, in Micronics, the court noted that Plaintiff's intentional interference with contractual relations claim was founded purely on allegations of "intentional and malicious false statements." Id. The court held that "[t]hese allegations effectively charge fraud, so claims based on them are subject to Rule 9(b)," and that these same "allegations cannot serve as the 'lynchpin' of [a different] claim without triggering Rule 9(b)." Id. (quoting Cardinale, 567 F.3d at 14–15).

Here, if the allegation of "knowingly false accusations" were the entirety of Plaintiff's 93A claim, as in Micronics, then the fraud claim would be the "lynchpin" of the 93A charge,

14

triggering the requirements of Rule 9(b). However, that is not the case here. Plaintiff has included other allegations—that "Defendants improperly pressured TSC to agree to unreasonable contract terms, . . . and leveraged the parties' unequal bargaining power to force TSC to agree to an extension of the parties' agreement and then used that extension to buy time and retain access to the Mitrend platform," Am. Compl. ¶ 131 [#5]—that could stand on their own to support the 93A claim without the allegation of a misrepresentation. Therefore, fraud does not serve as the lynchpin to the 93A claim and thus Rule 9(b) is not invoked.

    C. Rule 12(b)(6) Challenge (Count III)

Defendants make a brief argument that Plaintiff's claim for Alteration or Removal of Copyright Management Information claim (Count III) is insufficiently pleaded, contending that Plaintiff's "allegation[s are] entirely conclusory and may not even satisfy the lenient notice pleading standard of Rule 8(a)." Mem. Supp. Mot. Dismiss 9 [#23]. Plaintiff counters that "[t]he Court should ignore Defendants' tepid suggestion that TSC has not met the liberal pleading standard of Fed. R. Civ. P. 8(a)." Opp'n Mot. Dismiss 14 n.16 [#30].

Arguably, Defendants' discussion of this issue is so superficial it could be considered waived. See Micronics, 2018 WL 4845749, at *5 (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")). Regardless of the waiver issue, Plaintiff prevails on the merits of the argument. The amended complaint pleads factual allegations that allow for the plausible inference that Defendants violated 17 U.S.C. § 1202. See, e.g., Am. Compl. ¶¶ 98–99 (pleading facts supporting plausible inference that copyright management information existed on allegedly infringed work); ¶¶ 57–59, 66, 100 (pleading facts supporting plausible inference that copyright management information was removed or altered); ¶ 55

(pleading facts supporting plausible inference that removal of copyright management information was intentional) [#5]. Thus, Count III clearly meets the requirements of Fed. R. Civ. P. 8(a)(2).

### IV.     <u>Conclusion</u>

For the reasons set forth above, Defendants' <u>Motion to Dismiss Counts III, IV, VI, and VII of the Amended Complaint</u> [#22] is DENIED.

IT IS SO ORDERED.

Date: November 24, 2020                                         <u>/s/ Indira Talwani       </u>
                                                                United States District Judge